[Cite as *State v. Waldron*, 2019-Ohio-477.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 18CAC020018 |
| | : | |
| TONY P. WALDRON, JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Delaware Municipal
                                                        Court, Case No. 17TRC14167



JUDGMENT:                                     AFFIRMED




DATE OF JUDGMENT ENTRY:          February 11, 2019




APPEARANCES:

For Plaintiff-Appellee:                        For Defendant-Appellant:

MELISSA A. SCHIFFEL                     JON KLEIN
70 North Union Street                         101 Heather Ln.
Delaware, OH 43015                          Powell, OH 43065

*Delaney, J.*

{¶1} Appellant Tony P. Waldron, Jr. appeals from a January 24, 2018 judgment entry of the Delaware Municipal Court overruling his motion to suppress. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} The following evidence is adduced from the record of the suppression hearing on October 31, 2017. The hearing was brief and limited to the issue of whether the deputy had reasonable suspicion to traffic-stop appellant.

{¶3} Deputy Joshua Bender of the Delaware County Sheriff's Department was on routine patrol at 2:39 a.m. on July 8, 2017. Bender was in uniform and in a marked cruiser when he observed appellant operating a white Chevy truck on U.S. Route 23 near Meeker Way. Bender observed that appellant did not have a rear license plate.

{¶4} Bender's cruiser was equipped with a video camera. The dashcam video of Bender briefly following appellant and subsequently stopping him was entered as appellee's exhibit at the suppression hearing. Bender testified he could see something in the rear window of the truck, but he was unable to discern whether it was a temporary tag and he certainly couldn't read it until he had effectuated the traffic stop.

{¶5} Upon stopping appellant, in the illumination from the cruiser, the temporary tag taped in the rear window of the truck's cab was visible.

{¶6} Bender cited appellant with one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(a) and one count of failure to properly display license plate pursuant to R.C. 4503.21.[1]

{¶7} Appellant entered pleas of not guilty and filed a motion to suppress. The suppression hearing took place on October 31, 2017 and appellee called Deputy Bender, the sole witness. On November 17, 2017, the trial court overruled appellant's motion to suppress by judgment entry. Appellant subsequently entered a plea of no contest to O.V.I. and appellee dismissed the count of failure to properly display license plate.

{¶8} Appellant now appeals from the trial court's decision overruling his motion to suppress and raises one assignment of error:

## ASSIGNMENTS OF ERROR

{¶9} "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS AND VIOLATED HIS RIGHTS TO BE FREE FROM UNLAWFUL SEIZURE UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES AND OHIO CONSTITUTION."

## ANALYSIS

{¶10} Appellant argues the trial court should have granted his motion to suppress because Bender had no reasonable suspicion to detain him once he spotted the temporary tag in the window of the truck. We disagree.

{¶11} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In

---

[1] Appellee's brief states appellant was also cited with one count of possession of marijuana pursuant to R.C. 2925.11 but that charge and its disposition is not in the record before us, which contains solely the traffic case.

reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶12} In the instant case, the trial court found Bender had reasonable suspicion to stop appellant for a violation of R.C. 4503.21(A)(3). Appellant argues on appeal that Bender did not have reasonable suspicion to stop and detain appellant because the temporary tag was displayed in the truck's rear window.[2] R.C. 4503.21(A)(3) states:

> No person to whom a temporary license placard or windshield
>
> sticker has been issued for the use of a motor vehicle under section
>
> 4503.182 of the Revised Code, and no operator of that motor vehicle,
>
> shall fail to display the temporary license placard in plain view from
>
> the rear of the vehicle either in the rear window or on an external rear

---

[2] Appellee argues appellant failed to file the transcript of the suppression hearing, which was true when appellee filed its brief on September 27, 2018. We subsequently granted appellant's motion to supplement the record with the transcript of the suppression hearing, and the transcript was filed on November 30, 2018.

surface of the motor vehicle, or fail to display the windshield sticker in plain view on the rear window of the motor vehicle. No temporary license placard or windshield sticker shall be covered by any material that obstructs its visibility.

{¶13} Bender stopped appellant because he did not observe a rear license plate, unaware that appellant had a temporary tag secured in the rear window of the truck. The issue posed by this case is whether Bender had reasonable and articulable suspicion to stop appellant. The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In *Terry,* the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton,* 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984).

{¶14} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable

and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo,* 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable suspicion determination:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.
>
> *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶15} Traffic stops based upon observation of a traffic violation are constitutionally permissible. *Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 1996–Ohio–431, 665 N.E.2d 1091. This Court has held that any traffic violation, even a *de minimis* violation, may form

a sufficient basis upon which to stop a vehicle. *State v. Bangoura,* 5th Dist. No. 08 CA 95, 2009–Ohio–3339, ¶ 14, citing *State v. McCormick,* 5th Dist. No.2000CA00204, 2001 WL 111891 (Feb. 2, 2001); *State v. Woods*, 5th Dist. Licking No. 12-CA-19, 2013-Ohio-1136, ¶ 60.

{¶16} Although appellant argues the traffic stop was not supported by probable cause, Bender did not need probable cause to stop him, only reasonable suspicion. Appellant further argues, though, that he did not violate R.C. 4503.21(A)(3) because the temporary tag was secured in the rear window of the truck cab. We find, though, that the temporary tag was not in "plain view." Bender testified he could not identify the tag, much less read it, until he was very close to it. We have reviewed similar facts in the context of violations of R.C. 4503.21 and have found that the officer's inability to view plates does provide reasonable and articulable suspicion for a traffic stop. *State v. Haren*, 5th Dist. Stark No. 2014CA00196, 2015-Ohio-2849, ¶ 12 [trooper observed no front license plate prior to stop but upon approaching vehicle plate was lying flat on the dashboard]; *State v. Eddy*, 5th Dist. Ashland No. 99-COA-01316, 2000 WL 1402, *3 [officer had reasonable suspicion of violation of R.C. 4503.21 where temporary tag not in plain view and officer permitted to approach driver to issue a warning]; *State v. Burgess*, 5th Dist. Holmes No. 00CA19, 2001-Ohio-1735 [troopers could not observe temporary tag until they were short distance from the stopped vehicle]. See also, *State v. Anderson*, 11th Dist. Lake No. 2017-L-127, 2018-Ohio-2455, ¶ 17 [officer didn't see plate until he approached vehicle therefore plate not "in plain view"].

{¶17} In the instant case, we have the benefit of the dashcam video which illustrates Bender's perspective beginning shortly before he initiated the traffic stop. We

agree with the trial court's observation that the temporary tag is not visible, much less legible, until Bender traffic-stopped appellant. T. 14. While the vehicles are in motion, the tag is not identifiable as a temporary tag and the number is not visible. Bender therefore had reasonable and articulable suspicion of a violation of the statute. As the Eleventh District Court of Appeals noted, "[t]he intent of the law is to require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes." *State v. Anderson*, 11th Dist. Lake No. 2017-L-127, 2018-Ohio-2455, ¶ 18, citing *State v. Durfee*, 11th Dist. Lake No. 96-L-198, 1998 WL 156857, *3 (Mar. 6, 1998). The tag was not visible and the number was not legible until Bender stopped the vehicle.

{¶18} At the suppression hearing, appellant further argued any lawful detention ceased when Bender observed the temporary tag in the window, and Bender had no authority to investigate further. The trial court limited the evidentiary hearing to the immediate traffic stop. Detention of a stopped driver may continue when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop, but in light of the truncated evidence in the record, we will not speculate what that evidence may have been. *State v. Ellis*, 5th Dist. Licking No. 14-CA-66, 2015-Ohio-472, ¶ 14, citing *State v. Coniglio,* 185 Ohio App.3d 157, 923 N.E.2d 646, 2009–Ohio–6087, ¶ 11.

{¶19} We find the trial court's findings of fact are supported by competent, credible evidence. *Medcalf*, 111 Ohio App.3d at 145. We further find the trial court properly determined Bender's traffic stop of appellant is supported by reasonable and articulable suspicion because the temporary tag was not visible.

{¶20} Appellant's sole assignment of error is overruled and the judgment of the Delaware Municipal Court is affirmed.

## CONCLUSION

{¶21} The sole assignment of error is overruled and the judgment of the Delaware Municipal Court is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Baldwin, J., concur.